UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., ) | Case No.: 10-CV-01614-LHK |
| ) | |
| Plaintiff, ) | ORDER RE: DKT. NOS. 42, 45, AND 51 |
| ) | |
| v. ) | |
| ) | |
| THOMAS RICH MCINNIS, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

This Order addresses three motions: (1) Plaintiff Joe Hand Promotions, Inc.'s motion for default judgment against Defendant Sarah Ann Unger, individually and dba Seabreeze Tavern, Dkt. No. 42 ("Mot. for Default J."); (2) Joe Hand's motion for partial summary judgment against Defendants Thomas Rich McInnis and Sarah Ann Unger, individually and dba Seabreeze Tavern, Dkt. No. 45 ("Mot. for Summ. J."); *see also* Dkt. Nos. 60, 61; and (3) and Unger's motion to set aside default judgment, Dkt. No. 51 ("Mot. to Set Aside"). The Court held a hearing on these matters on May 5, 2011. McInnis and Unger were present in the courtroom. Joe Hand's counsel appeared telephonically. After considering the parties' submissions, the relevant legal authorities, and the parties' oral arguments, the Court hereby GRANTS Unger's motion to set aside default, DENIES without prejudice Joe Hand's motion for partial summary judgment, and DENIES Joe Hand's motion for default judgment as moot.

///

# I. BACKGROUND

## A. Factual Background

Joe Hand, a Pennsylvania corporation, claims to possess the exclusive nationwide commercial distribution rights to the Saturday, April 18, 2009 telecast of *Ultimate Fighting Championship 97: "Redemption" Silva v. Leites* (the "Program"). Dkt. No. 1 ("Compl."). These distribution rights included all under-card bouts and fight commentary. *Id.* ¶ 10. According to Joe Hand's complaint, filed on April 15, 2010, Defendants illegally intercepted and published the Program at their business establishment in violation of federal and state law. *Id.* Based on the allegations contained in its complaint, Joe Hand brings four causes of action against Defendants: (1) Violation of 47 U.S.C. § 605, *et seq.*; (2) Violation of 47 U.S.C. § 553, *et seq.*; (3) Conversion; and (4) Violation of California Business and Professions Code § 17200, *et seq*. *Id.* ¶¶ 9-37.

## B. Procedural Background

Joe Hand filed his complaint on April 15, 2010. On August 2, 2010, this case was reassigned to the undersigned judge. Dkt. No. 10. On August 9, 2010, the Court set a case management conference for September 17, 2010. Dkt. No. 11. On August 11, 2010, Joe Hand moved for entry of default against Sarah Ann Unger, individually and dba Seabreeze Tavern. On August 17, 2010, McInnis and Unger filed letters with the Court. Dkt. Nos. 16, 17. In his letter, McInnis stated that he had received the Clerk's notice setting the case management conference but had not yet been served in the lawsuit. Furthermore, McInnis represented that he would accept service via mail and planned to attend the September 17, 2010 case management conference. In her letter, Unger stated that she had been served and represented that she would appear at the case management conference. Unger also stated that she had not worked at the Seabreeze Tavern for close to a year and was having trouble finding a lawyer to represent her.

On August 18, 2010, Joe Hand filed an ex parte application for an order extending time to complete service. Dkt. No. 14. The Court granted the application and issued an order extending time to serve McInnis. Dkt. No. 18. On August 24, 2010, the Clerk entered default as to Sarah Ann Unger, individually and dba Seabreeze Tavern. Dkt. No. 19. On September 10, 2010, McInnis was served. Dkt. No. 20. At the September 17, 2010 case management conference, the

1  Court set a case schedule. Dkt. No. 21.  On September 30, 2010, McInnis and Unger answered Joe
2  Hand's complaint.  Dkt. No. 29.  For whatever reason, however, Defendants' Answer was not
3  docketed until October 20, 2010.  Nevertheless, according to Defendants' Answer, McInnis mailed
4  Joe Hand's counsel a copy of the Answer on September 29, 2010.  Despite this, Joe Hand moved
5  for entry of default against Thomas Rich McInnis, individually and dba Seabreeze Tavern on
6  October 11, 2010.  Dkt. No. 25.  On October 15, 2010, the Clerk entered default as to Thomas Rich
7  McInnis, individually and dba Seabreeze Tavern.  Dkt. No. 28.
8  On December 13, 2010, Joe Hand moved ex parte for an order vacating the December 15,
9  2010 case management conference, which the Court set at the September 17, 2010 initial case
10  management conference.  Dkt. No. 31.  Joe Hand claimed that it would soon file motions for
11  default judgment against Defendants.  In addition, Joe Hand claimed, despite the October 20, 2010
12  docketing of Defendants' Answer, that it had not yet received an answer from Defendants.  The
13  Court denied the motion on the grounds that default as to McInnis appeared to have been entered in
14  error.  Dkt. No. 32.  At the December 15, 2010 case management conference, the Court set aside
15  default as to McInnis.  Dkt. No. 33.  The Court also extended the parties' court mediation deadline
16  to February 28, 2011.  *Id.*
17  On March 4, 2011, pursuant to stipulation, the Court again extended the parties' court
18  mediation deadline, this time to April 7, 2011.  Dkt. No. 41.  The parties then arranged for an April
19  7, 2011 court mediation session.  Joe Hand then attempted, ex parte, to vacate the mediation
20  session.  This resulted in the last minute cancellation of the mediation session, without the Court's
21  knowledge or approval.  At the April 13, 2011 follow-up case management conference, the Court
22  referred the case to a Magistrate Judge Settlement Conference.
23  On March 9, 2011, Joe Hand moved for default judgment as to Sarah Unger, individually
24  and dba Seabreeze Tavern.  Dkt. No. 42.  On March 31, 2011, Joe Hand moved for partial
25  summary judgment against Defendants Thomas Rich McInnis and Sarah Ann Unger, individually
26  and dba Seabreeze Tavern.  Dkt. No. 45.  Finally, on April 13, 2011, Unger moved to set aside the
27  Clerk's entry of default against her.  Dkt. No. 51.
28  ///

3

## II. ANALYSIS

### A. Motion to Set Aside Default

This "court may set aside an entry of default for good cause." FED. R. CIV. P. 55(c). "To determine 'good cause', a court must 'consider three factors: (1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether it had no meritorious defense; or (3) whether reopening the default judgment would prejudice' the other party." *United States v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010) (quoting *Franchise Holding II v. Huntington Rests. Group, Inc.*, 375 F.3d 922, 925-26 (9th Cir. 2004)) (alterations omitted). "This standard, which is the same as is used to determine whether a default judgment should be set aside under Rule 60(b), is disjunctive, such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default." *Id.* (citation omitted). "'[W]hile the same test applies for motions seeking relief from default judgment under both Rule 55(c) and Rule 60(b), the test is more liberally applied in the Rule 55(c) context' . . . ." *Id.* at 1091 n.1 (quoting *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 631 (7th Cir. 2009)) (alterations omitted). "This is because in the Rule 55 context there is no interest in the finality of the judgment with which to contend." *Id.* (citing *Hawaii Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986)).

In her motion to set aside default, Unger provides several reasons why this Court should set aside the August 25, 2010 default entered against her. Mot. to Set Aside 1. First, Unger represents that she is not an attorney and is proceeding in this litigation pro se. *Id.* Second, she has sought representation but has been unable to locate affordable counsel in a timely manner. *Id.* at 1-2. As further support for her motion, Unger attached the August 11, 2010 letter that she sent to this Court and, according to the face of the letter, Joe Hand's counsel. *Id.*, Ex. A. The body of the letter reads as follows:

> I was served in the above lawsuit and have been looking for legal counsel, unfortunately the lawyers I have spoken with are not able to practice in federal courts and or are asking too much money to represent me in a frivolous lawsuit that should not even include me, since I am not the owner of the Seabreeze Tavern, and I have not worked there for close to a year now, so I am not even sure why I am being sued by Joe Hands????

4

Case No.: 10-CV-01614-LHK
ORDER RE: DKT. NOS. 42, 45, AND 51

> I am still looking for representation at this time. I will appear at the September 17, 2010 court hearing and will hopefully have representation by then.

Unger's claim that she is not an owner is supported by McInnis' letter to the Court, which reads, in relevant part: "I am not sure why Sarah Unger is named in the lawsuit, she is not an owner of the Seabreeze Tavern?" Dkt. No. 16.

Joe Hand opposes Unger's motion. Dkt. No. 62 ("Opp'n to Set Aside"). Joe Hand argues that Unger's motion "falls woefully short of establishing even one of the good cause factors, let alone all three." *Id.* at 4.

Although Unger's motion is brief, the Court finds, after considering the three factors outlined in *Mesle*, that good cause exists to set aside the Clerk's entry of default against Unger. Unger has not been an absentee litigant. After being served with Joe Hand's complaint, Unger wrote a letter to this Court questioning her inclusion in the lawsuit and denying her liability on the basis that she is not an owner of the Seabreeze Tavern. Unger then appeared at the initial case management conference in this matter on September 17, 2010. At that conference, Unger again denied liability. Unger also answered Joe Hand's complaint, though untimely, on September 30, 2010. Finally, Unger appeared at the hearing on her motion to set aside default on May 5, 2011. Setting aside default as to Unger, who has continuously denied liability, is consistent with the policy that "judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Mesle*, 615 F.3d at 1091 (quoting *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984)) (footnote and quotation marks omitted).

### 1. Culpable Conduct

"[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and intentionally failed to answer." *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001) (quotation and quotation marks omitted). Here, "the term 'intentionally' means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer." *Mesle*, 615 F.3d at 1092. Instead, the term means something like "willful, deliberate, or evidence of bad faith." *TCI Group*, 244 F.3d at 697 (quotation and quotation marks omitted). "Neglectful failure to answer as to which the defendant offers a

5

Case No.: 10-CV-01614-LHK
ORDER RE: DKT. NOS. 42, 45, AND 51

credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process is not 'intentional' under our default cases . . . ." *Id.* "[S]imple carelessness is not sufficient to treat a negligent failure to reply as inexcusable, at least without a demonstration that other equitable factors, such as prejudice, weigh heavily in favor of denial of the motion to set aside a default." *Mesle*, 615 F.3d at 1092.

Unger's conduct here is not intentional because she has offered a credible, good faith explanation as to why she failed to timely answer Joe Hand's complaint. Joe Hand served Unger on July 20, 2010. Dkt. No. 9. After being served, Unger attempted to find a lawyer but was unsuccessful. As a result, Unger had to proceed pro se. Before Joe Hand served McInnis, the current owner and operator of the Seabreeze Tavern, Unger wrote a letter to this Court contesting Joe Hand's complaint against her. In that letter, Unger also put Joe Hand on notice that she was unrepresented. Still without a lawyer, Unger appeared at the September 17, 2010 initial case management conference held in this matter and disputed her inclusion in this case. Furthermore, Unger answered Joe Hand's complaint on September 30, 2010. Although this answer came well after the August 10, 2010 deadline, and after the Clerk had already entered default against her, it came soon after McInnis was served. It seems reasonable that Unger, a former employee and non-owner of the establishment where the Program was allegedly shown illegally, would prefer to answer the complaint after the current owner of the Seabreeze Tavern entered the litigation.

Because Unger did not intend to "take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process," she did not intentionally fail to answer. *See Stellmacher v. Guerrero*, No. 10-CV-01357-JAM, 2011 U.S. Dist. LEXIS 3936, at *3 (E.D. Cal. Jan. 6, 2011) (setting aside default and default judgment where the defendant was proceeding pro se and wrote a letter to the Court contesting the plaintiff's complaint, and attempted to attend two hearings). Therefore, this factor does not prohibit the Court from setting aside the Clerk's entry of default against Unger.

///

///

6

Case No.: 10-CV-01614-LHK
ORDER RE: DKT. NOS. 42, 45, AND 51

**2. Meritorious Defense**

"A defendant seeking to vacate a default judgment must present specific facts that would constitute a defense. But the burden on a party seeking to vacate a default judgment is not extraordinarily heavy." *Mesle*, 615 F.3d at 1094 (citing *TCI Group*, 244 F.3d at 700) (quotation marks omitted). "All that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense: 'the question whether the factual allegation is true' is not to be determined by the court when it decides the motion to set aside the default." *Id.* (quotation and alterations omitted). "Rather, that question 'would be the subject of the later litigation.'" *Id.* (quotation omitted).

As evidence that she has a meritorious defense, Unger cites the August 11, 2010 letter that she wrote to this Court. Dkt. No. 17. In that letter, Unger denies being an owner of Seabreeze Tavern, states that she has not worked at Seabreeze Tavern for close to a year, and questions why she is even included in the lawsuit. *Id.* Joe Hand argues that Unger has not met her burden because the letter attached to her motion does not state that she was not an owner or operator of the Seabreeze Tavern when the Seabreeze Tavern allegedly broadcast the Program illegally. Opp'n to Set Aside 5. In addition, Joe Hand argues that Unger's status as a liquor licensee of the Seabreeze Tavern makes her liable under the applicable statutes. *Id.*

Even though Unger did not specifically state in her letter that she was not an owner of the Seabreeze Tavern at the time of the alleged broadcast of the Program, her definitive statement that she is "not the owner of the Seabreeze Tavern" makes it reasonable to assume that she was not an owner at the time of the alleged violation. This inference is made more reasonable because in addition to denying that she is the owner of Seabreeze Tavern, Unger also states in her letter that she has not worked at Seabreeze Tavern for almost a year. This statement implies that Unger's sole connection with the Seabreeze Tavern is as a former employee. Furthermore, Unger denied at the hearing that she has ever been an owner of Seabreeze Tavern.

Joe Hand's argument that Unger is still liable, even as a non-owner, because she is named on the Seabreeze Tavern's liquor license is better addressed through summary judgment and trial. Joe Hand's citation to several California cases and statutes in support of its argument suggests that

7

Joe Hand's position is disputable at best and will be discussed further in the summary judgment portion of this Order. Because the burden on Unger to present facts that would constitute a defense "is not extraordinarily heavy," the Court finds that Unger's representation that she is not the owner of the Seabreeze Tavern constitutes a defense. This, nevertheless, does not mean that the Court will ultimately accept Unger's argument. Whether Unger can prevail is a matter for summary judgment and trial.

### 3. Prejudice to Plaintiff

Joe Hand's only argument that it will be prejudiced is that it has already waited long enough to resolve this case. Opp'n to Set Aside 6-7. However, "[t]o be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case." *Mesle*, 615 F.3d at 1095 (quoting *TCI Group*, 244 F.3d at 701). Joe Hand's argument that it will not suffer prejudice if the Court sets aside default as to Unger therefore fails. Moreover, setting aside default will only slightly delay Joe Hand's case against Unger.[1] Joe Hand has already moved for partial summary judgment against Unger, and a trial date in this matter is set for June 20, 2011.

### 4. Conclusion

Because all three factors weigh in favor of Unger, the Court finds that Unger has established good cause for setting aside the default entered against her. Therefore, the Court GRANTS Defendant Sarah Ann Unger's motion to set aside default and DENIES Joe Hand's motion for default judgment as moot. The Clerk shall set aside default as to Sarah Ann Unger, individually and dba Seabreeze Tavern.

Joe Hand's counsel noted at the hearing that Unger has not responded to discovery requests that it served prior to the discovery deadline. Unger claimed at the hearing that she has not yet received any discovery requests. As stated at the hearing, Joe Hand has agreed to again serve Unger with its discovery requests. Unger agreed to respond to Joe Hand's discovery within seven days of receipt.

///

---

[1] Unger has represented that she will attend the Magistrate Judge Settlement Conference ordered by the Court. Dkt. No. 53.

8

Case No.: 10-CV-01614-LHK
ORDER RE: DKT. NOS. 42, 45, AND 51

**B. Motion for Partial Summary Judgment**

Joe Hand moves for partial summary judgment on the issue of whether Defendants illegally intercepted and broadcast the Program. Mot. for Summ. J. 4. McInnis and Unger argue that because the factual issue of whether the fight was ever shown at Defendants' establishment is still in dispute, the Court should deny Joe Hand's motion. Dkt. Nos. 60, 61.

### 1. Legal Standard

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." FED. R. CIV. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

The party seeking summary judgment bears the initial burden of showing an absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). "Once the moving party carries its initial burden, the adverse party 'may not rest upon the mere allegations or denials of the adverse party's pleading,' but must provide affidavits or other sources of evidence that 'set forth specific facts showing that there is a genuine issue for trial.'" *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc) (citations omitted). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202.

### 2. Governing Law

The Federal Communications Act of 1934, 47 U.S.C. § 605 *et seq.*, "prohibits the unauthorized interception of encrypted closed-circuit telecasts." *See Garden City Boxing Club, Inc. v. Lan Thu Tran*, No. 05-cv-05017 RMW, 2006 WL 2691431, at *1 (N.D. Cal. Sept. 20, 2006) (citing 47 U.S.C. § 605(a)). This "applies to encrypted satellite transmissions." *Kingvision Pay-Per-View, Ltd. v. Scott E's Pub, Inc.*, 146 F. Supp. 2d 955, 958 (E.D. Wis. 2001) (citing *Kingvision*

9

*Pay Per View, Ltd. v. Williams*, 1 F. Supp. 2d 1481, 1484 (S.D. Ga. 1998); 47 U.S.C. § 605(b)); *see also J & J Sports Prods., Inc. v. Basto*, No. 10-cv-1803 SI, 2011 WL 566843, at *1 (N.D. Cal. Feb. 14, 2011) ("The Federal Communications Act of 1934 . . . prohibits commercial establishments from intercepting and broadcasting satellite cable programming without a license."). Similarly, the Federal Cable Communications Policy Act, amended by the Cable & Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 553, "prohibits the unauthorized interception of 'any communications service offered over a cable system.'" *See Garden City Boxing*, 2006 WL 2691431, at *1 (quoting 47 U.S.C. § 553(a)); *see also J & J Sports Prods., Inc. v. Cortes*, No. 08-cv-04287 CRB, 2009 WL 801554, at *2 (N.D. Cal. Mar. 25, 2009) (Section 553 "prohibits the unauthorized reception or interception of communications offered over a cable system.").

"Any person aggrieved by any violation of subsection (a) of" § 605 or subsection (a)(1) of § 553 "may bring a civil action in a United States district court." *See* 47 U.S.C. § 605(e)(3)(A); 47 U.S.C. § 553(c)(1). Under § 605, "any person aggrieved" includes "any person with proprietary rights in the intercepted communication." 47 U.S.C. § 605(d)(6).

Plaintiff need not establish "willfulness" in order to establish liability. *See J & J Sports Prods., Inc. v. Vega*, No. CIV-10-635-M, 2011 WL 776172, at *2 (W.D. Okla. Mar. 1, 2011) ("Both 47 U.S.C. §§ 553 and 605 are strict liability statutes.") (citing 47 U.S.C. § 553(c)(3)(C); 47 U.S.C. § 605(e)(3)(C)(iii)). Instead, [w]illfulness is relevant to the issue of damages. *See* 47 U.S.C. § 605(e)(3)(C)(iii) ("In any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $250."); 47 U.S.C. § 553(c)(3)(C) ("In any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $100.").

"Under California law, conversion has three elements: (1) ownership or right to possession of property; (2) wrongful disposition of the property right of another; and (3) damages." *Basto*, 2011 WL 566843, at *1 (citing *G.S. Rasmussen & Assoc. v. Kalitta Flying Serv.*, 958 F.2d 896, 906 (9th Cir. 1992)). The exclusive right to distribute a commercial telecast is a right to possession of

10

Case No.: 10-CV-01614-LHK
ORDER RE: DKT. NOS. 42, 45, AND 51

1  property. *See Don King Productions/Kingvision v. Lovato*, 911 F. Supp. 419, 423 (N.D. Cal.
2  1995).

### 3. Joe Hand's Showing

Joe Hand represents that it owned the exclusive commercial distribution rights for the Program and that any commercial establishment in the United States had to contract with Joe Hand in order to distribute the Program. Dkt. No. 42-4 ("Joe Hand Decl."), at ¶ 3. According to Joe Hand, Defendants did not obtain a license to show the Program. *Id.* ¶ 7. Nevertheless, Joe Hand's investigator observed a broadcast of the Program at Seabreeze Tavern on April 18, 2009. Dkt. No. 42-3.

Joe Hand admits that it does not know whether the Program was intercepted via cable or satellite. Mot. for Summ. J. 8 n.7. Joe Hand argues, however, that the method used to unlawfully intercept and broadcast the Program is relevant only to damages, not liability. *Id.* Because Joe Hand has not requested summary judgment as to which method Defendants used to unlawfully broadcast the Program, the Court declines to consider the question. Ultimately, Joe Hand will only be able to collect damages under either § 605 or § 553, not both. *Basto*, 2011 WL 566843, at *2. The damages available to Joe Hand and the specific statute violated will be issues for trial. For purposes of Joe Hand's motion for summary judgment, the Court finds Joe Hand has met its initial burden to show that the Program was shown at Seabreeze Tavern on April 18, 2009 without Joe Hand's permission.

### 4. Defendants' Showing

In their motion papers, Defendants make one main argument in opposition to Joe Hand's motion for partial summary judgment. According to Defendants, they have at no time "acknowledged showing the stated fight which is at issue, nor at this time have [they] provided any evidence that the stated fight was shown at the Seabreeze Tavern." Dkt. Nos. 54, 58. Defendants argue that this establishes a fact in dispute. Dkt. Nos. 53, 57. Curiously absent from Defendants' oppositions and affidavits is any statement denying that Defendants showed the Program on April 18, 2009.

Defendants' affidavits do not establish a genuine dispute as to whether the Program was shown at Seabreeze Tavern. In order to establish a genuine dispute as to a material fact, "[t]he non-moving party must show more than the mere existence of a scintilla of evidence." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson,* 477 U.S. at 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202). In other words, "[t]he non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). "In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citing *Anderson,* 477 U.S. at 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202). "In determining whether a jury could reasonably render a verdict in the non-moving party's favor, all justifiable inferences are to be drawn in its favor." *Id.* (citation omitted). Even drawing all justifiable inferences in Defendants' favor, the Court cannot conclude that a reasonable jury could—based on Defendants' assertion that they have not admitted liability—find that the Program was not shown at the Seabreeze Tavern on April 18, 2009.

At the hearing, however, the Court asked McInnis if he showed the Program at Seabreeze Tavern on April 18, 2009. In doing so, the Court read to McInnis several methods that an individual can use to illegally intercept broadcasts like the Program. *See* Dkt. No. 42-4. McInnis then denied that the Program could have been shown at the Seabreeze Tavern. According to McInnis, patrons at Seabreeze Tavern can control the TV's at his establishment using a remote control that generally rests on the bar. McInnis claims that unless it was possible for a patron to simply turn the channel to the Program without any additional effort, then the Program could not have been shown at Seabreeze Tavern. McInnis also claimed that the Seabreeze Tavern does not have any special decryption box that could have intercepted the Program.

McInnis' statement at the hearing that Seabreeze Tavern did not have the capability to illegally show the Program on April 18, 2009 creates a genuine dispute as to McInnis' and Unger's liability. Drawing all inferences in McInnis' favor, a jury could reasonably find that the Program was not shown at the Seabreeze Tavern on April 18, 2009. Therefore, the Court DENIES Joe

Hand's motion for partial summary judgment as to McInnis, individually and dba Seabreeze Tavern and Unger, individually and dba Seabreeze Tavern.

### 5. Unger's Liability

One issue remains. Although McInnis has basically admitted that he is the owner and operator of Seabreeze Tavern, Unger has not made the same admission. The only evidence that Joe Hand presents showing that Unger had any connection to the Seabreeze Tavern on the night the Program was shown is Seabreeze Tavern's liquor license, which lists Sarah Ann Unger as a licensee. Dkt. No. 42-2, Ex. A.[2] Thomas Rich McInnis is also listed as a licensee. *Id.* Unger claims that because she is not on the business license, she should not be sued by Joe Hand. Dkt. No. 55, Ex. A. Although Unger refers to the document as a business license, it is actually titled "Fictitious Business Name Statement."[3] At the hearing, Unger represented that she was only employed at Seabreeze Tavern as a bartender and stated that she has never been an owner. In addition, Unger stated that she does not remember whether or not she was working at Seabreeze Tavern on April 18, 2009.

As Joe Hand concedes, the document submitted by Unger establishes that McInnis, not Unger, applied to do business as Seabreeze Tavern. Although Joe Hand may be able to prove at trial that Unger did business as Seabreeze Tavern, Unger's submission of the Fictitious Business Name Statement and her statements at the hearing have created a genuine dispute as to whether she ever did business as Seabreeze Tavern. Therefore, in addition to the reasons set forth above, Joe Hand cannot succeed on his motion for summary judgment as to Unger's liability because a genuine dispute exists as to whether Unger played any role in the alleged illegal showing of the Program.

---

[2] In his declaration, Thomas Riley states that the liquor license is a true and correct copy of a printout from the California Department of Alcoholic Beverage Control website. Dkt. No. 42-2, at ¶ 3. The Court takes judicial notice of the document pursuant to Federal Rule of Evidence 201(b)(2).

[3] Although Joe Hand disputes that the document is a business license, he does not question that the document establishes that McInnis applied for the Ficticious Business Name Statement. The Court takes judicial notice of the document pursuant to Federal Rule of Evidence 201(b)(2) as a matter of public record.

13
Case No.: 10-CV-01614-LHK
ORDER RE: DKT. NOS. 42, 45, AND 51

1    Nevertheless, Joe Hand argues that Unger's appearance as a licensee on the Seabreeze Tavern's liquor license is an independent and sufficient basis to find Unger liable for the showing of the Program. Dkt. No. 62, at 5-6. Joe Hand argues that the California Alcohol Beverage Control laws make clear that a licensee is the owner and operator of the establishment. Dkt. No. 62, at 5. This statement of the law is not, however, supported by Joe Hand's cited authority. In sum, Joe Hand's authority essentially establishes that "[t]he owner of a liquor license has the responsibility to see to it that the license is not used in violation of law and as a matter of general law the knowledge and acts of the employee or agent are imputable to the licensee." *Munro v. Alcoholic Beverage Control Appeals Bd.*, 181 Cal. App. 2d 162, 164, 5 Cal. Rptr. 527 (1960).

Although the authority cited by Joe Hand does suggest that Unger's appearance, along with McInnis, as a licensee on the Seabreeze Tavern's liquor license creates vicarious liability in certain situations, it does not mandate liability under § 605 or § 533. This is because the rule making a liquor licensee vicariously liable for the acts of employees applies to the misuse of the liquor license, not to the violation of law in general. As one California court put it, "the rule is that, '[t]he licensee, if he elects to operate his business through employees must be responsible to the licensing authority for their conduct in the exercise of his license. . . .'" *Garcia v. Martin*, 192 Cal. App. 2d 786, 790, 14 Cal. Rptr. 59 (1961) (quoting *Mantzoros v. State Bd. of Equalization*, 87 Cal. App. 2d 140, 144, 196 P.2d 657 (1948)). Furthermore, California law provides for the suspension of a licensee's liquor license when the licensee violates, causes, or permits a violation of California's alcohol laws "or any other penal provisions of law of [California] prohibiting or regulating the sale, exposing for sale, use, possession, giving away, adulteration, dilution, misbranding, or mislabeling of alcoholic beverages or intoxicating liquors." CAL. BUS. & PROF. CODE § 24200(b). Even though there exists some tangential relationship between an establishment's liquor license and broadcasts shown in that establishment, the unlawful showing of a broadcast is not an exercise of a liquor license. Therefore, California's alcohol laws do not mandate that a liquor licensee should be per se liable for the unlawful showing of a broadcast at the establishment listed on the liquor license.

This decision is further supported by the liability standard established by §§ 605 and 553. "Liability under section 605 requires proof that a defendant has (1) intercepted or aided the interception of, and (2) divulged or published, or aided the divulging or publishing of, a communication transmitted by the plaintiff by wire or radio." *Joe Hand Promotions, Inc. v. Smith*, 2:09-cv-01047 JWS, 2010 U.S. Dist. LEXIS 56462, at *7 (D. Ariz. June 7, 2010) (quoting *Cal. Satellite Sys. v. Seimon*, 767 F.2d 1364, 1366 (9th Cir. 1985)) (quotation marks and alterations omitted).[4] "Section 553 provides in pertinent part, 'No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so . . . .'" *Id.* at *7. Simply because an individual is listed as a liquor licensee on an establishment's liquor license does not establish that the licensee actually intercepted or aided in the interception of a broadcast that was unlawfully shown at that establishment. As a result, an individual's status as a liquor licensee does not establish their liability under §§ 605 and 553.

The court in *Joe Hand Promotions, Inc. v. Smith* came to the same conclusion based on facts similar to those at issue here. In *Smith*, the individual defendant was a principal of the establishment, in that case an LLC, where a broadcast was unlawfully shown. On that basis, the plaintiff moved for summary judgment as to the defendant's liability under §§ 605 and 553. The court observed, however, that it was not aware of "any controlling authority which would support personal liability based on" the defendant's role as a principal of the establishment where the broadcast was shown. In addition, the defendant, in his answer, denied that he had any supervisory capacity and control over the activities occurring within the establishment on the night the broadcast was shown. Based on these facts, the court denied the plaintiff's motion for summary judgment on the issue of liability. *Joe Hand Promotions, Inc. v. Smith*, 2010 U.S. Dist. LEXIS 56462, at *8-9.

In addition to McInnis' denial that the Program was shown at the Seabreeze Tavern, Joe Hand's motion for partial summary judgment as to Unger's liability also fails because Joe Hand's

---

[4] As stated earlier, communications by wire or radio also include satellite cable programming. *See* 47 U.S.C. § 605(d)(6).

15

Case No.: 10-CV-01614-LHK
ORDER RE: DKT. NOS. 42, 45, AND 51

only evidence attaching liability to Unger is her status as a liquor licensee. Unger's status as a liquor licensee is not sufficient evidence to show that no genuine dispute as to her liability exists. Furthermore, although Unger has not denied that she was present at Seabreeze Tavern on April 18, 2009, she has denied that she is an owner of Seabreeze Tavern and has questioned whether she should even be included in this lawsuit. Dkt. No. 17. Thus, a genuine dispute as to whether Unger aided or assisted in the interception of the Program exists.

### 6. Conclusion

Joe Hand carried his initial burden to show that no genuine dispute exists that the Program was shown unlawfully at Seabreeze Tavern on April 18, 2009. Defendants, however, succeeded in creating a genuine dispute as to their liability. Because a genuine dispute exists, the Court DENIES Joe Hand's motion for partial summary judgment. This denial is without prejudice because Joe Hand has yet to receive responses to his discovery requests. At the hearing, McInnis stated that he has yet to respond to Joe Hand's discovery requests and agreed to respond within seven days. Unger claimed at the hearing that she never received the discovery requests that Joe Hand claims to have served. Joe Hand agreed to serve the requests again, and Unger agreed to respond to the discovery requests within seven days of receipt. Because Joe Hand has not yet received responses to its discovery requests, Joe Hand may renew its motion for summary judgment if those responses show that no genuine dispute as to liability exists.

### C. Motion for Default Judgment

Because the Court granted Unger's motion to set aside entry of default, the Court DENIES Joe Hand's motion for default judgment as to Unger as moot.

### III. CONCLUSION

For the reasons set forth above, the Court orders as follows:

(1) The Court GRANTS Unger's motion to set aside entry of default. The Clerk shall set aside default as to Sarah Ann Unger, individually and dba Seabreeze Tavern;

(2) The Court DENIES without prejudice Joe Hand's motion for partial summary judgment against Defendants;

(3) The Court DENIES Joe Hand's motion for default judgment as moot;

16
Case No.: 10-CV-01614-LHK
ORDER RE: DKT. NOS. 42, 45, AND 51

1      (4) Unger shall respond to Joe Hand's discovery requests within seven days of receipt;

2      (5) McInnis shall respond to Joe Hand's discovery requests by May 12, 2011.

3  In order to establish liability and collect damages under either 47 U.S.C. § 605 or 47 U.S.C. § 553, Joe Hand must establish at trial that McInnis or Unger actually violated one of these statutes. A general showing that either Defendant illegally intercepted the Program will not be sufficient.

**IT IS SO ORDERED.**

Dated: May 5, 2011

_____
LUCY H. KOH
United States District Judge

United States District Court
For the Northern District of California

Case No.: 10-CV-01614-LHK
ORDER RE: DKT. NOS. 42, 45, AND 51